UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **STOP ILLINOIS HEALTH CARE FRAUD, LLC, a Delaware Limited Liability Company, individually and on behalf of and in the names of the United States of America and The State of Illinois,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **12 - CV - 9306** Judge Coleman |
| **ASIF SAYEED, an Illinois Resident; HEALTHCARE CONSORTIUM OF ILLINOIS, an Illinois Corporation; MANAGEMENT PRINCIPLES, INC., an Illinois Corporation; VITAL HOME & HEALTHCARE, INC., an Illinois Corporation; PHYSICIAN CARE SERVICES, S.C., an Illinois Corporation, d/b/a Home Physician Care Services,** | ) | |
| **Defendants.** | ) | |

## ANSWER TO FIRST AMENDED COMPLAINT *QUI TAM*

Now come the Defendants, Asif Sayeed, Management Principals, Inc., Vital Home and Healthcare, Inc. and Physician Care Services, S.C. by their attorney Donald J. Kindwald, of the Kindwald Law Offices, P.C., and in answer to Plaintiff's First Amended Complaint, states as follows:

### I. The Parties

#### A. Scheme Leader Defendant - Asif Sayeed

1. Asif Sayeed resides at 1001 Prestwick Drive, Frankfort, IL 60423, he was born in January of 1949.

**ANSWER:**

**Asif Sayeed ("Sayeed") admits the allegations contained in paragraph 1.**

**Management Principals, Inc. ("MPI") admits the allegations contained in paragraph 1.**

**Vital Home and Healthcare, Inc. ("Vital") admits the allegations contained in paragraph 1.**

**Physician Care Services, S.C. ("PCS") admits has the allegations contained in paragraph 1.**

2. Mr. Sayeed is businessperson and entrepreneur in the suburban Chicago area. Mr. Sayeed has a lengthy and notorious history of healthcare related fraud.

**ANSWER:**

**Sayeed admits that he is businessperson and entrepreneur in the suburban Chicago area. Sayeed denies the remaining allegations contained in paragraph 2.**

**MPI admits that Sayeed is businessperson and entrepreneur in the suburban Chicago area. MPI denies the remaining allegations contained in paragraph 2.**

**Vital admits that Sayeed is businessperson and entrepreneur in the suburban Chicago area. Vital denies the remaining allegations contained in paragraph 2.**

**PCS admits that Sayeed is businessperson and entrepreneur in the suburban Chicago area. PCS denies the remaining allegations contained in paragraph 2.**

3. Mr. Sayeed graduated from Governor's State University in University Park, Illinois, in 1986 with a bachelor's degree and later graduated from Harvard University Business School in 1992. Over the last two decades, Mr. Sayeed has founded and owned multiple healthcare companies.

**ANSWER:**

**Sayeed admits the allegations contained in paragraph 3.**

**MPI admits the allegations contained in paragraph 3.**

**Vital admits the allegations contained in paragraph 3.**

**PCS admits the allegations contained in paragraph 3.**

4. Between 1984 and 2000, he was President/CEO of American Health Care Providers, Inc., an HMO licensed under the Illinois Insurance Department. At its peak, American had annual revenues in excess of $500 million and was one of the 3 largest HMO's in Illinois. However, in 2000, the Illinois Department of Insurance suddenly ordered the company into liquidation because of insolvency. Later that year, the State Insurance Director sued Mr. Sayeed and his wife, Shaheen Sayeed (who acted as the Chief Operating Officer) and accused them of fraud and gross mismanagement of the HMO's reserves.

**ANSWER:**

**Sayeed admits that between 1984 and 2000, he was President/CEO of American Health Care Providers, Inc., an HMO licensed under the Illinois Insurance Department. Sayeed further admits that at its peak, American had annual revenues in excess of $500 million. Sayeed lacks knowledge or information sufficient to form a belief about the truth of the allegation that American was one of the 3 largest HMOs in Illinois. Sayeed make no response to the remaining allegations contained in paragraph 4 as the Illinois Department of Insurance Complaint and Order speak for themselves and are the best evidence of their content.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 4.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 4.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 4.**

5. The scheme that the Sayeeds operated through American Health Care Providers, Inc. involved utilizing multiple affiliated and owned sub-companies who entered into lease arrangements and other transactions designed to take cash from the HMO. The Sayeeds were accused of using the HMO money to pay for luxury cars, including a Lamborghini and two Bentleys, and jet airplanes.

**ANSWER:**

**Sayeed denies that any operations conducted by Sayeeds through American Health Care Providers, Inc. involved utilizing multiple affiliated and owned sub-companies who entered into lease arrangements and other transactions designed to take cash from the HMO. Sayeed makes no response to the remaining allegations contained in paragraph 5 as the Illinois Department of Insurance Complaint speaks for itself and is the best evidence of its contents.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 5.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 5.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 5.**

6. Following the well-publicized turmoil with American, Mr. Sayeed did not exit the business of medical fraud in Illinois. Instead, Mr. Sayeed has created multiple entities including three entities from which he presently conducts the fraudulent referral enterprise which is the basis of this suit. Those entities are: Management Principles, Inc. ("MPI") – which acts as a lead generator and referral source; Vital Home and Healthcare, Inc. ("Vital") –which receives the unlawful referrals and then provides

home health services; and Physician Care Services, doing business under the registered assumed name Home Physician Care Services - which also receives these unlawful referrals and also performs bogus home health care face to face and recertification for Vital.

**ANSWER:**

**Sayeed admits that he has created multiple entities including MPI. Sayeed denies the remaining allegations contained in paragraph 6.**

**MPI admits that Sayeed has created MPI. MPI denies that it acts as a lead generator and referral source. MPI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 6.**

**Vital Home denies that Sayeed has created Vital Home. Vital denies that it receives unlawful referrals and then provides home health services. Vital lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 5.**

**PCS denies that it was created by Sayeed. PCS denies that it receives unlawful referrals and also performs bogus home health care face to face and recertification for Vital. PCS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 5.**

7. Additionally, Mr. Sayeed has numerous real estate holdings, including commercial property from which these related healthcare companies operate and three others properties including his home. He owns two beach front properties in Florida: One in Hollywood and one in Ft. Lauderdale. These homes are valued in the millions of dollars each.

**ANSWER:**

**Sayeed admits that he owns his home, two properties in Florida and the commercial property from which these related healthcare companies operate. Sayeed denies the remaining allegations contained in paragraph 7.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7.**

8. Mr. Sayeed also has a network of affiliated healthcare businesses. Although the conduct outlined above primarily involves just three related entities, it is believed that unlawful conduct is being perpetrated by numerous other healthcare affiliated entities owned by Mr. Sayeed.

**ANSWER:**

**Sayeed denies the allegations contained in paragraph 8.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 8.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 8.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 8.**

**B. Healthcare Consortium of Illinois ("HCI")**

9. The unlawful referral practices detailed herein begin with Healthcare Consortium of Illinois, ("HCI").

**ANSWER:**

**Sayeed denies the allegations contained in paragraph 9.**

**MPI denies the allegations contained in paragraph 9.**

**Vital denies the allegations contained in paragraph 9.**

**PCS denies the allegations contained in paragraph 9.**

10. HCI provides case management services through the Illinois Community Care Program. The program's provisions can be found under Title 89, Chapter II, Part 240 of the Illinois Administrative Code. The Illinois Community Care Program is administered by the Illinois Department of Aging and paid for through Medicaid as a waiver program. The Department of Aging has licensed Community Care Program Care Coordination Units ("CCUs") in 13 areas in Illinois. There are a limited number of licensed Community Care Program providers. Those are listed on the Department of Aging website at http://www.state.il.us/aging/1directory/ccpccu.pdf. One such licensee is HCI, which serves Southwestern and South-Southeastern Chicago, ZIP Codes 60609, 60617, 60619, 60620, 60621, 60623, 60627, 60628, 60629, 60632, 60633, 60636, 60638, 60643, 60652, 60655, 60827. Further information regarding CCUs is explained at http://www.state.il.us/aging/1athome/case-mgmt.htm.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10.**

11. HCI is a non-profit organization designed to provide or act as a "network of networks" with a full range of healthcare and social service providers. HCI is located at 1350 East Sibley Boulevard, Suite 303, Dolton, Illinois. Their telephone number is 708-841-9515.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11.**

12. According to Illinois Secretary of State filings, the registered agent of HCI is Salim Al-Nuridi. There is also believed to be a personal relationship between HCI's principal/CEO Salim Al-Nuridi and Asif Sayeed, as both serve on the Muslim Advisory Council-State of Illinois.

**ANSWER:**

**Sayeed denies that there is personal relationship between himself and Salim Al-Nuridi. Sayeed denies that he serves on the Muslim Advisory Council-State of Illinois. Sayeed lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 12.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12.**

13. HCI is lawfully permitted on behalf of the Illinois Department of Aging to perform health, wellness and safety assessments of Illinois residents who may be in need of social services. However, HCI's unlawful conduct occurs when it takes this protected beneficiary data and unlawfully provides it to marketers at MPI, Vital and PCS. These marketers then directly call the beneficiaries, represent to the beneficiaries that the call is coming from the "Department of Aging" and then unlawfully and fraudulently solicit Medicare-eligible services to these patients.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of whether HCI is lawfully permitted on behalf of the Illinois Department of Aging to perform health, wellness and safety assessments of Illinois residents who may be in need of social services. Sayeed denies the remaining allegations contained in paragraph 13.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of whether HCI is lawfully permitted on behalf of the Illinois Department of Aging to perform health, wellness and safety assessments of Illinois residents who may be in need of social services. MPI denies the remaining allegations contained in paragraph 13.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of whether HCI is lawfully permitted on behalf of the Illinois Department of Aging to perform health, wellness and safety assessments of Illinois residents who may be in need of social services. Vital denies the remaining allegations contained in paragraph 13.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of whether HCI is lawfully permitted on behalf of the Illinois Department of Aging to perform health, wellness and safety assessments of Illinois residents**

**who may be in need of social services, and as such requires strict proof thereof. PCS denies the remaining allegations contained in paragraph 13.**

14. In particular, three employees of HCI have been identified as being involved in this conduct: Candace Brooks, Rosetta l/k/u (believed to be Cutright); and Malika Mohammed. These individuals provide patient lists that HCI obtains through HCI's role as a licensed CCU to Management Principles, Inc., which then uses that information to solicit home health services.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of whether three employees of HCI have been identified as being involved in this conduct: Candace Brooks, Rosetta l/k/u (believed to be Cutright); and Malika Mohammed. Sayeed denies the remaining allegations contained in paragraph 14.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of whether has three employees of HCI have been identified as being involved in this conduct: Candace Brooks, Rosetta l/k/u (believed to be Cutright); and Malika Mohammed. MPI denies the remaining allegations contained in paragraph 14.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14.**

**C. Management Principles, Inc. ("MPI")**

15. Management Principles, Inc. ("MPI") operates as the marketing entity for the illegal referral scheme detailed herein.

**ANSWER:**

**Sayeed denies the allegations contained in paragraph 15.**

**MPI denies the allegations contained in paragraph 15.**

**Vital denies the allegations contained in paragraph 15.**

**PCS denies the allegations contained in paragraph 15.**

16. According to filings with the Illinois Secretary of State, MPI was incorporated in December 2004. MPI's president is Mr. Sayeed and its registered agent is Mr. Asim Farooqi. Upon information and belief, Asif Sayeed and Asim Farooqi are childhood friends from India. Mr. Sayeed sponsored Mr. Asim Farooqi during his visa process to come to the United States to work for him. The Illinois Secretary of State filings disclose the address of the registered agent as 8051 186th Street, Tinley Park, Illinois 60487. That real estate is personally owned by the Mr. Sayeed and his wife. According to the deed recorded in Will County, Illinois, the property was purchased in March of 2005 for $995,000.00. This is the same address that is used by Vital Home and Healthcare, Inc.

**ANSWER:**

**Sayeed makes no response to the allegations relative to the filings with the Illinois Secretary of State and the Will County Recorder of Deeds as the filings of the Illinois Secretary of State and Will County Recorder of Deeds speak for themselves and are the best evidence of their content. Sayeed denies that he and Asim Farooqi are childhood friends from India and that he sponsored Asim Farooqi during his visa process to come to the United States to work for him. Sayeed denies that the property located at 8051 186th Street, Tinley Park, Illinois 60487 is personally owned by him and his wife. Sayeed admits that Vital's address is 8051 186th Street, Tinley Park, Illinois 60487.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16.**

17. All three entities (i.e., MPI, Vital and PCS) operate out of 8051 186th Street, Tinley Park, and are, in practice, operating as a single entity. MPI's staff and marketers operate in the same office space, and directly next to the staff and administration personnel employed by Vital Home & Healthcare as well as the employees of Physician Care Services, S.C. Upon information and belief, they are literally desks apart.

**ANSWER:**

**Sayeed admits that MPI, Vital and PCS operate out of 8051 186th Street, Tinley Park. Sayeed denies the remaining allegations contained in paragraph 17.**

**MPI admits that MPI, Vital and PCS operate out of 8051 186th Street, Tinley Park. MPI denies the remaining allegations contained in paragraph 17.**

**Vital admits that MPI, Vital and PCS operate out of 8051 186th Street, Tinley Park. Vital denies the remaining allegations contained in paragraph 17.**

**PCS admits that MPI, Vital and PCS operate out of 8051 186th Street, Tinley Park. PCS denies the remaining allegations contained in paragraph 17.**

18. Upon information and belief MPI's only activity is to engage in cold calling and/or marketing of Medicare eligible patients for health services to on behalf of PCS and Vital Home & Healthcare, Inc. Investigation has not disclosed any other legitimate business purpose engaged in by MPI.

**ANSWER:**

**Sayeed denies the allegations contained in paragraph 18.**

**MPI denies the allegations contained in paragraph 18.**

**Vital denies the allegations contained in paragraph 18.**

**PCS denies the allegations contained in paragraph 18.**

**D. Vital Home and Healthcare, Inc. ("Vital")**

19. Vital Home and Healthcare, Inc. is an Illinois home health agency licensed by the State of Illinois Department of Health. Vital's license number is 1007087. (See www.data.illinois.gov). Its NPI number is 1801992938. As discussed above, Vital operates out of the offices at 8051 186th Street, Tinley Park, Illinois 60487.

**ANSWER:**

**Sayeed admits the allegations contained in paragraph 19.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19.**

**Vital admits the allegations contained in paragraph 19.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19.**

20. Illinois Secretary of State filings disclose that, Vital's President is Mr. Sayeed and its Secretary is Asim Farooqi. In addition to the office in Tinley Park, Illinois, Vital also has an office in Munster, Indiana. Its website is www.vitalhomehealth.com.

**ANSWER:**

**Sayeed admits the allegations contained in paragraph 20.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20.**

**Vital admits the allegations contained in paragraph 20.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20.**

21. Vital provides the typical Medicare reimbursable home health services such as skilled nursing, occupational therapy and physical therapy ("OT/PT"), home health medical social workers and speech therapy. As is detailed above, Vital receives its patients through illegal referrals from MPI, using the information obtained by HCI and passed along to MPI.

**ANSWER:**

**Sayeed admits that Vital provides the typical Medicare reimbursable home health services such as skilled nursing, occupational therapy and physical therapy ("OT/PT"), medical social workers and speech therapy. Sayeed denies the remaining allegations contained in paragraph 21.**

**MPI denies that Vital receives its patients through illegal referrals from MPI, using the information obtained by HCI and passed along to MPI. MPI lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 21.**

**Vital admits that Vital provides the typical Medicare reimbursable home health services such as skilled nursing, occupational therapy and physical therapy ("OT/PT"), medical social workers and speech therapy. Vital denies the remaining allegations contained in paragraph 21.**

**PCS lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21.**

**E. Physician Care Services, SC ("Physician Care")**

22. Physician Care Services, SC, an Illinois Corporation which also has the active assumed and registered name of "Home Physician Care Services," is the entity which provides the in-home physician services for patients obtained through the referral scheme outlined above.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 22.**

**PCS admits that it has the active assumed and registered name of "Home Physician Care Services," is an entity which provides in-home physician services for patients. PCS denies the remaining allegations contained in paragraph 22.**

23. According to the Illinois Secretary of State filings, Physician Care's President is Anish Kadakia and the Secretary is Asim Farooqi. Mr. Farooqi is also the registered agent. The entity was incorporated on June 22, 2006. The address for Physician Care is the same as both Vital and MPI, 8051 186th Street, Tinley Park, Illinois 60487.

**ANSWER:**

**Sayeed admits that the address for Physician Care is the same as both Vital and MPI, 8051 186th Street, Tinley Park, Illinois 60487. Sayeed makes no response relative to the records of the Secretary of State as the records of the Secretary of State speak for themselves and are the best evidence of their contents.**

**MPI admits that the address for Physician Care is the same as both Vital and MPI, 8051 186th Street, Tinley Park, Illinois 60487. MPI makes no response relative to the records of the Secretary of State as the records of the Secretary of State speak for themselves and are the best evidence of their contents.**

**Vital admits that the address for Physician Care is the same as both Vital and MPI, 8051 186th Street, Tinley Park, Illinois 60487. Vital makes no response relative to the records of the Secretary of State as the records of the Secretary of State speak for themselves and are the best evidence of their contents.**

**PCS admits that the address for Physician Care is the same as both Vital and MPI, 8051 186th Street, Tinley Park, Illinois 60487. PCS makes no response relative to the records of the Secretary of State as the records of the Secretary of State speak for themselves and are the best evidence of their contents.**

24. According to the Physician Care website (http://homephysiciancareservices.com) Physician Care delivers all services that might be expected from a family physician. The website also makes clear that by making house calls, they primarily serve Medicare beneficiaries under Medicare Part B. There are approximately 10 physicians that work at Physician Care Services. According to the Illinois Department of Financial Professional Regulations, Physician Care Services, SC, has the license number 042618942, which has been active since November 8, 2006. According to LexisNexis database searches, the Office Manager is Sonequa Cain and the listed contacts are Sakina Sayeed Kadakia and Asif Sayeed.

**ANSWER:**

**Sayeed makes no response relative to the records of the Secretary of State, PCS website, Illinois Department of Financial Professional Regulations and LexisNexis database as the aforementioned records speak for themselves and are the best evidence of their contents.**

**MPI makes no response relative to the records of the Secretary of State, PCS website, Illinois Department of Financial Professional Regulations and**

**LexisNexis database as the aforementioned records speak for themselves and are the best evidence of their contents.**

**Vital makes no response relative to the records of the Secretary of State, PCS website, Illinois Department of Financial Professional Regulations and LexisNexis database as the aforementioned records speak for themselves and are the best evidence of their contents.**

**PCS makes no response relative to the records of the Secretary of State, PCS website, Illinois Department of Financial Professional Regulations and LexisNexis database as the aforementioned records speak for themselves and are the best evidence of their contents.**

## II. Jurisdiction and Venue

25. This action arises under 31 U.S.C. §§ 3729 *et seq.*, known as the False Claims Act.

**ANSWER:**

**Sayeed makes no response relative to the allegations of the First Amended Complaint as the First Amended Complaint speaks for itself and is the best evidence of its content.**

**MPI makes no response relative to the allegations of the First Amended Complaint as the First Amended Complaint speaks for itself and is the best evidence of its content.**

**Vital makes no response relative to the allegations of the First Amended Complaint as the First Amended Complaint speaks for itself and is the best evidence of its content.**

**PCS makes no response relative to the allegations of the First Amended Complaint as the First Amended Complaint speaks for itself and is the best evidence of its content.**

26. Jurisdiction over the claims under the False Claims Act in this action is conferred on this Court by 31 U.S.C. § 3732(a), which provides for federal district court

jurisdiction for claims brought pursuant to the False Claims Act, and 28 U.S.C. § 1331, because this civil action arises under the laws of the United States.

**ANSWER:**

**Sayeed admits the allegations contained in paragraph 26.**

**MPI admits the allegations contained in paragraph 26.**

**Vital admits the allegations contained in paragraph 26.**

**PCS admits the allegations contained in paragraph 26.**

27. This Court has jurisdiction over the claims brought under state law pursuant to 31 U.S.C. § 3732(b), which provides for federal district court jurisdiction of actions brought under the laws of any state for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under the False Claims Act. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

**ANSWER:**

**Sayeed admits the allegations contained in paragraph 27.**

**MPI admits the allegations contained in paragraph 27.**

**Vital admits the allegations contained in paragraph 27.**

**PCS admits the allegations contained in paragraph 27.**

28. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred Chicago, Cook County, Illinois. Venue is further proper in this judicial district under 28 U.S.C. § 1391(b)(2), because MPI, Vital and Physician Care share a principal place of business in Tinley Park, Cook County, Illinois.

**ANSWER:**

**Sayeed admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim are alleged to have occurred in Illinois. Sayeed denies the remaining allegations contained in paragraph 28.**

**MPI admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim are alleged to have occurred in Illinois. MPI denies the remaining allegations contained in paragraph 28.**

**Vital admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim are alleged to have occurred in Illinois. Vital denies the remaining allegations contained in paragraph 28.**

**PCS admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim are alleged to have occurred in Illinois. PCS denies the remaining allegations contained in paragraph 28.**

## III. The Medicare Program and Home Health Services

29. The Medicare program was created in 1965 as part of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, to provide a federally funded health insurance program for the aged and disabled. The United States, through the Department of Health and Human Services, administers the program, and has delegated the administration of the

Medicare Program to the Health Care Financing Administration, a component of the Department of Health and Human Services.

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 29 as the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* speaks for itself and is the best evidence of its contents.**

**MPI makes no response to the allegations contained in paragraph 29 as the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* speaks for itself and is the best evidence of its contents.**

**Vital makes no response to the allegations contained in paragraph 29 as the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* speaks for itself and is the best evidence of its contents.**

**PCS makes no response to the allegations contained in paragraph 29 as the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* speaks for itself and is the best evidence of its contents.**

30. The Medicare program consists of two basic parts - Part A (42 U.S.C. §§ 1395c - 1395i-5) and Part B (42 U.S.C. §§ 1395j - 1395w-4). Part A covers all inpatient hospital services provided to eligible persons, known as Medicare beneficiaries. In addition, Part A covers certain home health services provided to Medicare beneficiaries who do not have Part B coverage. Part B provides coverage for a wide range of outpatient services, including for home health services for Part B eligible persons.

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 30 as 42 U.S.C. §§ 1395c - 1395i-5 and 42 U.S.C. §§ 1395j - 1395w-4 speak for themselves and are the best evidence of their content.**

**MPI makes no response to the allegations contained in paragraph 30 as 42 U.S.C. §§ 1395c - 1395i-5 and 42 U.S.C. §§ 1395j - 1395w-4 speak for themselves and are the best evidence of their content.**

**Vital makes no response to the allegations contained in paragraph 30 as 42 U.S.C. §§ 1395c - 1395i-5 and 42 U.S.C. §§ 1395j - 1395w-4 speak for themselves and are the best evidence of their content.**

**PCS makes no response to the allegations contained in paragraph 30 as 42 U.S.C. §§ 1395c - 1395i-5 and 42 U.S.C. §§ 1395j - 1395w-4 speak for themselves and are the best evidence of their content.**

31. Medical treatment and services are reimbursable under Medicare in accordance with the laws and regulations established by the United States through its agencies. Certain items and services are specifically excluded from reimbursement under Medicare, including: items or services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, (42 U.S.C. § 1395y(a)(1)(A)) and the frequency and duration of home health services which are in excess of normative guidelines that the Secretary shall establish by regulation (42 U.S.C. § 1395y(a)(1)(I).

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 31 as the laws and regulations established by the United States speak for themselves and are the best evidence of their content.**

**MPI makes no response to the allegations contained in paragraph 31 as the laws and regulations established by the United States speak for themselves and are the best evidence of their content.**

**Vital makes no response to the allegations contained in paragraph 31 as the laws and regulations established by the United States speak for themselves and are the best evidence of their content.**

**PCS makes no response to the allegations contained in paragraph 31 as the laws and regulations established by the United States speak for themselves and are the best evidence of their content.**

32. Federal law further specifically includes as a violation of the False Claims Act any violation of 42 U.S.C. § 1320a-7b, including knowingly and willfully making or causing to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program, and offering, paying or receiving any remuneration for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program. Federal law requires that entities provide economical medical services and, then, only where medically necessary, 42 U.S.C. § 1320c-5(a)(1), and provide evidence that the service given is medically necessary, 42 U.S.C. § 1320c-5(a)(3).

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 32 as Federal Law speaks for itself and is the best evidence of its content.**

**MPI makes no response to the allegations contained in paragraph 32 as Federal Law speaks for itself and is the best evidence of its content.**

**Vital makes no response to the allegations contained in paragraph 32 as Federal Law speaks for itself and is the best evidence of its content.**

**PCS makes no response to the allegations contained in paragraph 32 as Federal Law speaks for itself and is the best evidence of its content.**

## IV. Medicaid

33. Medicaid, officially known as the Grants to States for Medical Assistance Programs pursuant to Title XIX of the Act, 42 USC 1396 *et seq.*, is a needs-based assistance program and is jointly funded by the United States and individual States, including Illinois.

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 33 as 42 USC 1396 *et seq.* speaks for itself and is the best evidence of its content.**

**MPI makes no response to the allegations contained in paragraph 33 as 42 USC 1396 *et seq.* speaks for itself and is the best evidence of its content.**

**Vital makes no response to the allegations contained in paragraph 33 as 42 USC 1396 *et seq.* speaks for itself and is the best evidence of its content.**

**PCS makes no response to the allegations contained in paragraph 33 as 42 USC 1396 *et seq.* speaks for itself and is the best evidence of its content.**

## V. Community Care Program

34. The Community Care Program is a program administered through the Illinois Department of Aging, under provisions, which can be found at Title 89, Chapter II, Part 240 of the Illinois Administrative Code. The CCP program is paid for under the Medicaid as one of the waiver programs, and through the joint-funding structure of Medicaid, involves claims being submitted to both the State of Illinois and the United States.

**ANSWER:**

**Sayeed makes no response to the allegations contained in paragraph 34 as Title 89, Chapter II, Part 240 of the Illinois Administrative Code speaks for itself and is the best evidence of its content.**

**MPI makes no response to the allegations contained in paragraph 34 as Title 89, Chapter II, Part 240 of the Illinois Administrative Code speaks for itself and is the best evidence of its content.**

**Vital makes no response to the allegations contained in paragraph 34 as Title 89, Chapter II, Part 240 of the Illinois Administrative Code speaks for itself and is the best evidence of its content.**

**PCS makes no response to the allegations contained in paragraph 34 as Title 89, Chapter II, Part 240 of the Illinois Administrative Code speaks for itself and is the best evidence of its content.**

35. In order to manage services under the program, the Department of Aging has licensed Community Care Program Care Coordination Units ("CCUs") in 13 areas in Illinois. There are a limited number of licensed Community Care Program providers. The CCP program is a typical Medicaid waiver program that provides, among other things, unskilled and/or homemaker services to needy beneficiaries under Medicaid. Typically, the CCU designated by the Department of Aging in that area will receive a referral through the Illinois Department of Aging to perform a comprehensive assessment of a participant/beneficiary. Following the assessment, the participant is qualified for the potential services offered by the CCP. Section 240.340 of Title 89, Chapter II, Part 240 makes clear that the information obtained by the CCU is supposed to be confidential and only used to provide the services available under the Community Care Program. This provision is being violated on a widespread basis as detailed herein.

**ANSWER:**

**Sayeed denies that Section 240.340 of Title 89, Chapter II, Part 240 is being violated on a widespread basis as detailed herein. Sayeed admits the remaining allegations contained in paragraph 35.**

**MPI denies that Section 240.340 of Title 89, Chapter II, Part 240 is being violated on a widespread basis as detailed herein. MPI admits the remaining allegations contained in paragraph 35.**

**Vital denies that Section 240.340 of Title 89, Chapter II, Part 240 is being violated on a widespread basis as detailed herein. Vital admits the remaining allegations contained in paragraph 35.**

**PCS denies that Section 240.340 of Title 89, Chapter II, Part 240 is being violated on a widespread basis as detailed herein. PCS admits the remaining allegations contained in paragraph 35.**

## VI. The Illegal Referral Scheme

36. The entities herein are involved in an unlawful kickback and referral scheme involving multiple Illinois-based organizations which results in the unlawful marketing and soliciting of Medicare eligible participants for healthcare services. The entities involved are two affiliated healthcare providers and a marketing company which purportedly has a "contract" with a Department of Aging approved Community Care Coordination Unit ("CCU"), as discussed more fully *supra*. The healthcare organizations serve patients in the City of Chicago area. These health care entities and marketing entity are related in that they have a common ownership and work out of the same building. The sharing of information amongst these entities is further achieved by the sharing of employees.

**ANSWER:**

**Sayeed denies the allegations contained in paragraph 36.**

**MPI denies the allegations contained in paragraph 36.**

**Vital denies the allegations contained in paragraph 36.**

**PCS denies the allegations contained in paragraph 36.**

37. Upon information and belief, the entities are conspiring to defraud both Medicare and the State of Illinois' Medicaid program by paying a CCU employee for a list of CCU participants - including the confidential information that the participants have provided to the CCU intake person. Specifically, one such HCI employee who is actively involved in this scheme is Rosetta (last name unknown but believed to be Cutright. For purposes of clarity, this individual is identified herein as "Rosetta."). Rosetta is the primary contact between Healthcare Consortium and Vital Home Healthcare, Physician Care Services and MPI.

**ANSWER:**

**Sayeed admits that Rosetta is a contact between Healthcare Consortium and Vital Home Healthcare, Physician Care Services and MPI. Sayeed denies the remaining allegations contained in paragraph 37.**

**MPI admits that Rosetta is a contact between Healthcare Consortium and Vital Home Healthcare, Physician Care Services and MPI. MPI denies the remaining allegations contained in paragraph 37.**

**Vital admits that Rosetta is a contact between Healthcare Consortium and Vital Home Healthcare, Physician Care Services and MPI. Vital denies the remaining allegations contained in paragraph 37.**

**PCS admits that Rosetta is a contact between Healthcare Consortium and Vital Home Healthcare, Physician Care Services and MPI. PCS denies the remaining allegations contained in paragraph 37.**

38. On September 26, 2012, Rosetta was reached by calling Management Principles, Inc. whose number is 708-342-7082. During the call, Rosetta stated that she works with the Department of Aging and helps seniors obtain doctors and nursing visits at home. Rosetta further explained that MPI works with both the Healthcare Consortium, Inc., and the Department of Aging in order to find physicians and nurses for patients. On September 27, 2012, Rosetta was again reached by phone by calling Management Principles, Inc. whose number is 708-342-7082. In that conversation, Rosetta spoke about the "the services that we offer" and explained that MPI would arrange patient services - i.e., "doctor will come out once a month and nurse once a week" the patient. When asked, she further advised that the nurse that would come out would be from "Vital Home Health." Thereafter, she advised that the Vital nurses come out and monitor the patients' medications to make sure they are taking the right medications. Further, the nurse will take vital signs from the patient when asked, she advised that the physician would come from PCS and specifically that a Dr. Neumann would be the attending physician. She explained that the doctor comes out once a month and will determine whether or not the patient needs a change in medication or different dosages. She further indicated that they would bring in a physical therapist if the patient had any arthritis. Further, she advised that if the patient said their "side was hurting" they could bring in an "x-ray technician" to do an x-ray of her. She acknowledged that the doctor that would be providing the service would work with a pharmacy called "Crescent Pharmacy." Later, she advised that MPI could set us up with "their" durable medical equipment company and finally, that there was never a

need to bring a patient to the office because MPI "will bring the doctor to you." Rosetta made if very clear that "Medicare" would be paying for all of these services. She then explained that Part B Medicare pays for the doctor to come out and see her and Part A pays for the nurses to come out and see her. She stated that a patient would remain eligible to receive these services "for as long as she wants the service." See also stated that "Medicare is the one telling us" to provide these services. She then went on to cite and article in the Chicago Tribune that referenced this "service." She further stated that MPI "...work[s] with the Department of Aging" and advised that she gets patients' information through a "summary request" and advised that she calls patients and states that they "work with the Department of aging." She further stated that the Department of Aging "sends [MPI] information from time to time." She further advised that typically a case manager will come out and assess needs and completes paperwork and determines the need for housekeeping. However, she advised that she was the one who then does the "medical." Finally, Rosetta indicated that only patients with straight Medicaid would be eligible and may not be eligible if the patient was part of an HMO.

**ANSWER:**

**Sayeed lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38.**

**MPI lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38.**

**Vital lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 38.**