40235/06086/MAA/SJB

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STOP ILLINOIS HEALTH CARE FRAUD, LLC, a Delaware Limited Liability Company, individually and on behalf of and in the names of the United States of America and The State of Illinois,<br><br>Plaintiff,<br><br>v.<br><br>ASIF SAYEED, an Illinois Resident, HEALTHCARE CONSORTIUM OF ILLINOIS, an Illinois Corporation, MANAGEMENT PRINCIPLES, INC., an Illinois Corporation, VITAL HOME & HEALTHCARE, INC., an Illinois Corporation, and PHYSICIAN CARE SERVICES, S.C., an Illinois Corporation d/b/a Home Physician Care Services,<br><br>Defendants. | Case Number 1:12-cv-09306<br><br>Judge Sharon Johnson Coleman |

**DEFENDANT HEALTHCARE CONSORTIUM OF ILLINOIS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

Defendant, HEALTHCARE CONSORTIUM OF ILLINOIS, submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to F.R.C.P. 12(b)(6).

**NATURE OF LAWSUIT**

Plaintiff/Relator, Stop Illinois Health Care Fraud, LLC, an unidentified Delaware limited liability company, has filed a Second Amended Complaint *Qui Tam* against Defendants Asif Sayeed, Healthcare Consortium of Illinois ("HCI"), Management Principles, Inc. ("MPI"), Vital Home & Healthcare, Inc. ("Vital") and Physician Care Services ("PCS") alleging federal claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), of Defendants submitting, or

causing to be submitted, Medicare reimbursement claims which they knew to be false (Count I), and participating in an illegal referral kickback scheme in connection with the submission of the Medicare reimbursement claims in violation of 42 U.S.C. § 1320a-7b(b) (Count II). Plaintiff also alleges a supplemental state law claim under the Illinois False Claims Act, 740 ILCS 175/1 *et seq.*, for this same alleged conduct (Count III).

## **ARGUMENT**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 929 (2007)). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together," to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inference in favor of the non-moving party, and must accept as true all factual allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Ashcroft*, 556 U.S. at 678. However, the Court need not accept as true the complaint's legal conclusions, as "[t]hreadbare recitals of the elements of a cause of action, supported my mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.,* 550 U.S. at 555).

Statements in the complaint must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th

Cir. 2012). This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests'" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007). Because the "FCA is an anti-fraud statute," FCA claims "are subject to the heightened pleading requirements" of Federal Rule of Civil Procedure 9(b). *United States ex rel. Gross v. AIDS Research Alliance-Chicago.,* 415 F.3d 601, 604 (7th Cir. 2005). This rule requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Therefore, "[t]he complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [Government]." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.,* 772 F.3d 1102, 1106 (7th Cir. 2014).

Rule 9(b)'s heightened pleading standard requires "the plaintiff to do more than the usual investigation before filing his complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Therefore, "[a] complaint alleging fraud must provide 'the who, what, when, were and how." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

1. **COUNT I FAILS TO STATE A CLAIM UNDER THE FALSE CLAIM ACT AS THERE ARE NO FACTS OF HCI PRESENTING A FALSE OR FRAUDULENT CLAIM FOR PAYMENT**

A person violates the False Claim Act if he "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the government. 31 U.S.C. § 3729(a)(1)(A). He must know the claim is false. *Gross*, 415 F.3d at 604. To establish a claim,

"a relator must prove three elements: (1) a false or fraudulent claim; (2) which is presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 741 (7th Cir. 2007) (citing *United States ex rel. Walker v. R&F Prop. of Lake County, Inc.,* 433 F.3d 1349, 1355 (11th Cir. 2005). A relator must allege facts on an individualized transactional level to demonstrate liability. *Fowler*, 496 F.3d at 740. In *Grenadyor*, the court wrote:

> [I]t is not enough to allege . . . that the pharmacy engaged in a practice that violated a federal regulation. [Relator] would have had to allege either that the pharmacy submitted a claim to Medicare (or Medicaid) on behalf of a specific patient who had received a kickback, or at least name a Medicare patient who had received a kickback (presumably if the pharmacy provided a drug to a Medicare patient it billed Medicare for the cost of the drug minus the copay). The complaint contains no such allegations. Similarly, by failing to identify a single patient who received multiple gift bags over the course of the year the complaint fails to allege with the requisite particularity that any customer received more than $50 worth of these goodies."

772 F.3d at 1107 (internal citations omitted). While the specific factual details at issue in *Grenadyor* do not apply here, the legal principle utilized in these cases does. When pleading fraud, one must allege facts describing the content of the misrepresentations, amongst other things.

Plaintiff here only generally alleges in Count I that in order to acquire unearned Medicare funds, "Defendants, by and through their officers, agents and/or employees," engaged in fraudulent activity by submitting, or causing to be submitted, reimbursement claims which it knew to be false to an officer of employee of the United States Government. (Second Amended Complaint, Count I, ¶ 70.) Completely absent from Count I are the necessary details of who at HCI submitted or caused to be submitted a misrepresentation in a reimbursement claim to Medicare, when that misrepresentation was made, what was the content of the misrepresentation,

4

or how the misrepresentation was revealed to Plaintiff. Instead, Plaintiff incorporates allegations in several proceeding paragraphs into Count I, which are similarly absent of the requisite details or even a single allegation of an officer, agent and/or employee of HCI who submitted or caused to be submitted a claim for payment or approval to Medicare.[1] Plaintiff improperly lumps Defendants together and fails to specify which counts are asserted against which Defendants. *See United States ex rel. Walner v. NorthShore University Health System*, 660 F. Supp. 2d 891, 897 (N.D. Ill. 2009) (dismissing *qui tam* action brought pursuant to FCA, finding that relator failed to plead each defendant's "role in the fraud, including but not limited to who submitted the false claim.") (citing *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 778 (7th Cir. 1994)). In a multiple-defendant case a relator must "plead sufficient facts to notify each defendant of his alleged participating in the scheme[,] . . . [and] absent a compelling reason the [relator] is normally not entitled to treat multiple corporate defendants as one entity." *United States v. Sanford-Brown, Ltd.,* 788 F.3d 696, 705-06 (7th Cir. 2015).

Plaintiff's First Amended Complaint only set forth vague facts regarding Defendants MPI, Vital and/or PCS submitting claims for payment or approval to Medicare (First Amended Complaint, ¶¶ 43, 45, 54), which could not be attributed to HCI as a separate and distinct entity. Plaintiff did not allege that HCI submitted, or caused to be submitted, any claims to the Government, let alone any that were fraudulent or contained false claims. Plaintiff's Second Amended Complaint is still absent an allegation of HCI <u>submitting</u> any claims to the Government. It does contain a single, conclusory allegation that HCI <u>caused to be submitted</u> for payment to Medicare certain unspecified claims for (a) a home physician visit from PCS and (b)

---

[1] This is known as "shotgun" pleading. *See CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1001 (N.D. Ill. 2011). "Such pleadings make it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. Of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996)). It is particularly inappropriate in the context of a fraud claim, which must be pled with particularity. Fed. R. Civ. P. 9(b).

skilled nursing services from Vital allegedly provided to a Mikelone Williams on unspecified dates. (Second Amended Complaint, ¶58, "Claims for all of the services performed by Defendants for Mikeolene Willaims were caused to be submitted for payment to Medicare by Defendant HCI as a direct and proximate result of HCI's provision of protected health information in exchange for illegal kickbacks."). Yet this allegation fails to provide the specific details at an individualized transactional level concerning the claims that were submitted by PCS and/or Vital for the services provided to Mr. Willaims, how they were false, or how HCI caused these claims to be submitted. Plaintiff also fails to allege any facts in connection with services provided by the Defendants to any individuals other than Mr. Williams. The specific details of the claims, dates and payment are necessary in order to promote the reliable inference that claims were actually submitted and/or reimbursed by the Government. *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 854 (7th Cir. 2009); *United States ex rel. McGinnis v. OSF Healthcare System*, 104 U.S. Dist. LEXIS 89167, 2014 WL 2960344, at *8 (C.D. Ill. July 1, 2014).

On the subject of how HCI caused the unspecified claims for services provided to Mr. Williams to be submitted by PCS and/or Vital to Medicare, Plaintiff only sets forth the following vague allegation:

> "On information and belief, on or near the date of May 5, 2011, an MPI employee believed to be Alice Piwowarksi[2] personally delivered a gift card from Asif Sayed and his Defendant companies to HCI personnel, with the full knowledge of HCI Supervisors Ella Gray and Joe English, in exchange for protected health information of individuals who had been screened by HCI, including Mikeolene Williams." (Second Amended Complaint, ¶56).

---

[2] The allegation that the MPI employee who personally delivered gift cards is "believed to be Ms. Piwowarski" is directly contradicted by Plaintiff's prior allegations that she was an employee of Vital, not MPI. (Second Amended Complaint, ¶ 47).

Quite simply, this vague allegation is insufficient to demonstrate a connection between HCI and any false claims for services provided by Defendants MPI, Vital and/or PCS to Mr. Williams, let alone any other individual(s). A relator must "identify specific false claims for payment or specific false statements made in order to obtain payment." *United States ex rel. Garst v. Lockheed-Martine Corp.,* 328 F.3d 374, 376 (7th Cir. 2003).

Furthermore, Plaintiff must allege that the officer, agent and/or employee of HCI *knowingly* caused to be presented a false claim to the government for payment or *knowingly* made a statement in order to receive payment from the government. 31 U.S.C. § 3729(a)(1) (emphasis added). "The *mens rea* element, 'knowingly,' requires that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the information . . . Thus, innocent mistakes or negligence are not actionable." *United States ex rel. Durcholz v. FKW Inc.,* 189 F.3d 542, 544 (7th Cir. 1999) (citing *Hindo v. Univ. of Health Sci./The Chicago Med. Sch.,* 65 F.3d 608, 613 (7th Cir. 1995)).

In conclusion, Plaintiff's shotgun pleading, generalized assertion of "Defendants . . . submitting, or causing to be submitted, reimbursement claims which it knew to be false," and the complete lack of detail on how HCI caused a fraudulent claim for payment or approval to be submitted to Medicare, do not place this Court or HCI on notice of the alleged factual basis for HCI's purported violation of the FCA, or to satisfy Rule 9(b)'s particularity requirement. Therefore, Count I of the Complaint should be dismissed pursuant to Rule 12(b)(6).

  **2.    COUNT II OF THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE ANTI-KICKBACK STATUTE AS THERE ARE NO FACTS THAT HCI RECEIVED REMUNERATION IN RETURN FOR SERVICES PAID BY MEDICARE**

Plaintiff contends in Count II that Defendants have, and continue to be, engaged in ongoing and repeated violations of the provisions of 42 U.S.C. § 1320a-7b(b) (the "Anti-

Kickback Statute") and its prohibition on kickbacks in connection with referrals of patients for home health services. Plaintiff's Second Amended Complaint should be dismissed for failing to satisfy Rule 9(b)'s pleading standard and failing to provide sufficient factual background from which a factfinder could conclude that the alleged transactions involving HCI were illegal kickbacks.

The Anti-Kickback Statute makes it a felony "[to] knowingly and willfully solicit [] or receive [] any remuneration (including any kickback, bribe, or rebate) . . . in return for purchasing . . . or ordering any good . . . [or] service . . . for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C § 1320a-7b(b); *United States ex rel. Sharp v. Consol. Med. Transp., Inc.,* No. 96 C 6502, 2001 U.S. Dist. LEXIS 13923, 2001 WL 1035720, at *6-10 (N.D Ill. Sept. 4, 2001) (recognizing a cause of action under the FCA predicated on a violation of the Anti-Kickback Statute). The statute does not provide a right of private enforcement, but falsely certifying compliance with it is actionable under the FCA. *U.S. v. Rogen*, 459 F. Supp. 2d 692, 717 (N.D. Ill. 2006), aff'd, 517 F.3d 449 (7th Cir. 2008). To state such a claim in the instant case, Plaintiff relator must allege, with the specificity required by Rule 9(b), that HCI: "(1) knowingly and willfully, (2) offered[,] paid[, solicited or received], remuneration, (3) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program. *United States v. Omnicare, Inc.,* 11 C 8980, 2014 U.S. Dist. LEXIS 51001, 2014 WL 1458443, at *9 (N.D. Ill. Apr. 14, 2014).

Taking together all of the disjointed allegations in Plaintiff's Second Amended Complaint, its kickback theory is that in exchange for unspecified "gift cards and meals" certain unidentified case managers at HCI unlawfully provided to marketers at MPI, Vital and/or PCS a "list of names and personal information," or alternatively, "access to confidential files" with

beneficiary data, which MPI, Vital and/or PCS then uses to directly call beneficiaries to solicit Medicare-eligible services to these patients. (Second Amended Complaint, ¶¶13, 37, 41, 47) Plaintiff then generally alleges, once again, that "Defendants, by and through its officers, agents or employees," engaged in fraudulent activity by submitting, or causing to be submitted, reimbursement claims resulting from this illegal scheme, in violation of the FCA and the provisions of 42 U.S.C. § 1320a-7b(b). (Second Amended Complaint, ¶ 79.)

Setting aside Plaintiff's conclusory allegations, the Second Amended Complaint identifies three purported employees of HCI as being involved in this conduct – Candace Brooks, Rosetta Cutright and Malika Mohamed. (Second Amended Complaint, ¶ 14.) Yet the Second Amended Complaint fails to provide any specifics as to the what, when, where, and how of each of these individual's respective fraudulent conduct. Instead, Plaintiff only summarily states that these individuals provided to MPI unspecified "patient lists that HCI obtains through HCI's role as a licensed CCU" (Second Amended Complaint, ¶14), or alternatively, that Rosetta Cutright is "the primary contact" between HCI, MPI, Vital and PCS (Second Amended Complaint, ¶37.) Similarly, while Plaintiff identifies two former employees of Vital – Jim Szymanski and Alice Piwowarki – as purportedly having knowledge of Vital making payments in the form of gift cards and meals to "HCI's case manager" in exchange for access to "the confidential files" (Second Amended Complaint, ¶¶46-47), there is no allegation that Candace Brooks, Rosetta Cutright or Malika Mohamed is this HCI case manager, or even that these individuals had access to the unspecified "patient lists" and/or "confidential files."

Plaintiff completely fails to sufficiently identify by name(s) any of the HCI employee(s) who allegedly received the gift cards and meals, the specifics of the remuneration provided including amounts (other than the gift cards were "typically to Target, and were for amounts

9

from $50 to $250"), or any allegations that the individual(s) "knowingly and willfully" received the remuneration in return for Vital providing home health care services to a Medicare beneficiary. Instead, Plaintiff only alleges that Ms. Piwowarski has identified two HCI supervisors – Ella Gray and Joe English – who are allegedly "aware of this unlawful exchange." Again, there are no factual allegations that these two individuals actually participated in the kickback scheme, provided any beneficiary lists or access to confidential files, and/or personally received some form of remuneration for doing so. Finally, Plaintiff fails to allege the specific link between the receipt of "gift cards and meals" by an HCI case manager and actual claims submitted by MPI, Vital or PCS.

Turning again to Plaintiff's single, specific example of the alleged kickback referral scheme (Second Amended Complaint, ¶¶ 48-68), HCI Care Coordinator Akira Snydor is identified as providing an authorized and appropriate assessment of Medicare beneficiary Mikeolene Williams on May 2, 2011. There are no allegations that Ms. Snydor received a gift card, meal or some other form of remuneration in exchange for providing MPI, Vital or PCS with Mr. Williams' (or anyone else's) information for marketing purposes. Instead, Plaintiff sets forth a conclusory, temporally based allegation that since a marketer from MPI contacted Mr. Williams on May 5, 2011, three days after Ms. Snydor's authorized assessment, his information (and presumably his assessment) had to be received by MPI from HCI. Again, the who, what, when, where and how of Mr. Williams information being allegedly provided to MPI by HCI, including the specific remuneration supporting a kickback payment for the information, is completely absent. Instead, Plaintiff only alleges "on information and belief" that an MPI employee "believed to be Alice Piwowarksi" personally delivered an unspecified gift card to unspecified HCI personnel in exchange for unspecified protected health information of

Mikeolene Williams and other unspecified individuals. (Second Amended Complaint, ¶56). This does not provide a sufficient factual basis for reaching the conclusion that HCI employees received "kickbacks" from MPI, Vital and/or PCS in the form of gift cards in exchange for either confidential patient information or referrals, followed by MPI, Vital and/or PCS submitting claims and receiving payment under a federal health care program for services they provided.

In addition to the above, other paragraphs of the Second Amended Complaint plead facts "upon information and belief," either explicitly or implicitly. ("Upon information and belief, the entities are conspiring to defraud both Medicare and the State of Illinois' Medicaid program by paying a CCU employee for a list of CCU participants – including the confidential information that the participants have provided to the CCU intake person." Complaint at ¶37). This should come as no surprise as the Plaintiff/Relator, Stop Illinois Health Care Fraud, LLC, remains a mysterious entity that is only been identified in the pleadings as a Delaware limited liability company. Plaintiff/Relator has yet to provide any information on its members, or the source for its knowledge of the illegal referral kickback scheme other than "interviews with former employees of Defendants" (Second Amended Complaint, ¶¶56-57). This pleading of facts upon information and belief "won't do in a fraud case – for it can mean as little as 'on rumor' – unless (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions." *Grenadyor*, 772 F.3d at 1108 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 443 (7th Cir. 2011).

Plaintiff fails to provide grounds for its suspicions with respect to the alleged kickback referral scheme. *Pirelli Armstrong Tire*, 631 F.3d at 443 ("even as courts remain sensitive to information asymmetries that may present a plaintiff from offering more detail," the "grounds for the plaintiff's suspicions must make the allegations plausible."). Instead, it only attributes HCI's

11

role in the scheme to unspecified individuals receiving unspecified amounts of remuneration over an undefined period of time. Plaintiff then makes no effort to link specific individuals at HCI to specific information provided to MPI, Vital or PCS, or more importantly, any intent on their part to receive payment in return for providing beneficiary information to these entities. Plaintiff also fails to allege that the individuals at HCI were acting within the scope of their employment and at least in part for the benefit of HCI, which is a prerequisite to support a contention that HCI is liable on a theory of respondeat superior. *See United States v. One Parcel of Land*, 965 F.2d 311, 316-17 (7th Cir. 1992) (citing, e.g., *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) (in a False Claims Act case, knowledge of employee is only imputed to the corporation when employee acts for the benefit of the corporation and within the scope of his employment). Given the Second Amended Complaint's disjointed and vague allegations, one cannot even reasonably infer that in the event HCI did provide some beneficiary information to MPI, Vital and/or PCS, this was done for a nefarious purpose, as opposed to an appropriate referral to an authorized vendor for the delivery of health care services to a Medicare beneficiary. It is clear that Plaintiff's anti-kickback statue claim against HCI fails to meet the particularity standard of Rule 9(b), and should therefore be dismissed pursuant Rule 12(b)(6).

    **3.    COUNT III OF THE COMPLAINT SIMILARLY FAILS TO STATE A CLAIM UNDER ILLINOIS' FALSE CLAIMS ACT AND SHOULD BE DISMISSED**

Count III of Plaintiff's Complaint is brought pursuant to the Illinois False Claims Act, 740 ILCS 175/1 *et seq*,. and this Court's supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a). Similar to the FCA, a person violates the Illinois False Claims Act if he "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or

statement material to a false or fraudulent claim" to the government. 740 ILCS 175/3. The Illinois False Claims Act closely mirrors the FCA, and as a result, a relators pleading standard is the same for both causes of action. *See United States ex rel. Kennedy v. Aventis Pharms., Inc.,* 512 F. Supp. 2d 1158, 1163 n. 2 (N.D. Ill. 2007) (citing *Humphrey v. Franklin-Williamson Human Servs., Inc.,* 189 F. Supp. 2d 862, 867 (S.D. Ill. 2002)).

Plaintiff here does not plead or contend that there are any differences between these two statutes that are material to its claims in this case. Therefore, for the same reasons set forth by this Defendant in Sections 1 and 2 above, Count III of the Second Amended Complaint should also be dismissed pursuant to Rule 12(b)(6) due to Plaintiffs failure to place this Court or HCI on notice of the alleged factual basis for the purported violations of the Illinois False Claims Act.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant, HEALTHCARE CONSORTIUM OF ILLINOIS, requests that this Honorable Court dismiss all of the counts of Plaintiff's Second Amended Complaint as alleged for failure to state a claim pursuant to Rule 12(b)(6).

Respectfully submitted,

HEALTHCARE CONSORTIUM OF ILLINOIS

By: s/Scott J. Brown
    One of its Attorneys

Scott J. Brown (ARDC No. 6206656)
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
sbrown@cassiday.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2016, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Scott J. Brown

8233154 SBROWN;BRAUEN