# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STOP ILLINOIS HEALTH CARE FRUAD, LLC, a Delaware Limited Liability Company, individually and on behalf of and in the name of the United States of America and the State of Illinois, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Case No. 12 cv 9306 |
| | ) Judge Sharon Johnson Coleman |
| ASIF SAYEED, an Illinois Resident, HEALTHCARE CONSORTIUM OF ILLINOIS, an Illinois Corporation, MANAGEMENT PRINCIPLES, INC., an Illinois Corporation, VITAL HOME & HEALTHCARE, INC., an Illinois Corporation, PHYSICIAN CARE SERVICES, S.C., an Illinois Corporation, a/d/a Home Physician Care Services, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this *qui tam* action, relator Stop Illinois Health Care Fraud, LLC, ("Relator") alleges that defendants, Asif Sayeed, Healthcare Consortium of Illinois, Management Principles, Inc., Vital Home and Healthcare, Inc., and Physician Care Services, S.C., engaged in a fraudulent scheme in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), the Anti-Kickback Statute, 42 U.S.C. § 1320(a)-7b(b), and the Illinois False Claims Act, 740 ILCS 175/1 *et seq.*. Defendant Healthcare Consortium of Illinois ("HCI") filed a motion to dismiss [56] for failure to state a claim. Defendants Asif Sayeed, Management Principles, Inc., Vital Home & Healthcare, Inc., and Physician Care Services, S.C, (collectively "MPI") also move to dismiss the complaint for failure to state a claim [61]. MPI also moves to strike immaterial, scandalous, and impertinent matter from the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) [59]. For the reasons stated herein the motions are granted.

1

**Background**

The following facts are derived from the Second Amended Complaint for purposes of the motions now before the Court. Relator Stop Illinois Health Care Fraud, LLC, alleges that Asif Sayeed engaged in a fraudulent scheme through the defendant entities: Healthcare Consortium ("HCI"), a provider of case management services through the Illinois Community Care program; Management Principles, Inc. ("MPI"), a marketer of services for the other defendant entities; Vital Home and Healthcare, Inc. ("Vital"), a home health agency licensed by the State of Illinois to provide Medicare reimbursable home health services such as skilled nursing, occupational and physical therapy, social workers, and speech therapy; and Physician Care Services, SC ("PCS"), a provider of in-home physician services.

Relator alleges that HCI gathers information by performing wellness and safety assessments for Illinois residents who may be in need of medical and social services. (Dkt. 52 at ¶ 13). Relator alleges that HCI provides this information to MPI, Vital, and PCS, who then directly contact the patients, purporting to represent the Department of Aging and soliciting Medicare-eligible services to these patients. (*Id.*) The Complaint identifies three employees of HCI as involved in the conduct: Candace Brooks, Rosetta,[1] and Malika Mohammed. (*Id.* at ¶ 14). These individuals allegedly provide patient lists that from HCI to MPI, which then uses that information to solicit home health services. (*Id.*)

MPI, Vital, and PCS share a single business address, 8051 186th Street, Tinley Park, Illinois, which is owned by Sayeed, MPI's president. (*Id.* at ¶ 16). The Complaint alleges that the three entities operate as a single enterprise with personnel sharing office space at the Tinley Park location. Upon information and belief, MPI's only activity is to engage in cold calling and/or marketing of

---

[1] Rosetta's surname is unknown to Relator, but believed to be Cutright.

Medicare eligible patients for health services on behalf of Vital and PCS. Sayeed is also Vital's President. (*Id.* at ¶ 18, 20). Both MPI and PCS share the same registered agent, Asim Farooqi.[2]

Relator alleges "on information and belief" that the defendant entities are conspiring to defraud both Medicare and the State of Illinois' Medicaid program by paying an Illinois Department of Aging Community Care Program Care Coordination Unit ("CCU") employee for a list of CCU participants, including the confidential information that the participants have provided to the CCU intake person. The Complaint identifies a woman named Rosetta as the HCI employee contact between the defendant entities. (*Id.* at ¶ 37). Relator reached Rosetta by calling MPI. Allegedly, Rosetta informed the Relator that MPI works with both HCI and the Department of Aging to find physicians and nurses for patients. (*Id.* at ¶ 38). When asked about the services offered, Rosetta purportedly explained that MPI would arrange patient services provided by Vital and PCS, and that all services would be paid for by Medicare. (*Id.*)

Relator also contacted Rosetta by calling the PCS office. (*Id.* at ¶ 39). During the call, Rosetta explained that she works for MPI, PCS, and HCI. (*Id.*) While working at HCI she obtains information for potential referrals of patients. (*Id.*) Relator was also able to contact Rosetta by calling the telephone number for Vital. (*Id.* at ¶ 40).

Relator alleges that once the patient information is obtained, MPI calls the patients directly to solicit for additional medical services. During the calls, the MPI marketer relates that the callers are from the Department of Aging or that the caller received a referral from the Department of Aging, and then they convince the patient they are eligible for home health services paid for by Medicare. (*Id.* at ¶ 41). MPI then offers to send a physician to the patient's home to perform an assessment for services. (*Id.* at ¶ 42). If the patient accepts, MPI transfers the call to the PCS to schedule the visit. (*Id.*) The in-home physician assessment "nearly always" finds that the patient is

---

[2] Mr. Farooqi is not a party to this lawsuit.

3

qualified for home health services. (*Id.*) If the patient has a primary care physician, MPI will contact that physician stating that they have a referral from the Department of Aging for the patient to receive home health services and will have the physician return an authorization for the services. (*Id.* at ¶ 44-45.) Internal documentation from MPI and HCI allegedly show that it is an explicit written procedure for these entities to state that they have received a referral from the Department of Aging when no such process of referral exists. (*Id.*)

Jim Szymanski was hired by Sayeed as the Director of Marketing for Vital where he worked for a few months in 2009 or 2010. (*Id.* at ¶ 46). While employed at Vital, Szymanski learned that Vital was routinely given access to the confidential patient files from HCI in order to select potential home health patients with the most profit potential from Medicare reimbursements. (*Id.*) Vital made payments in the form of gift cards and meals to HCI's case manager in exchange for access to the confidential files. (*Id.*) Specifically, Alice Piwowarski, would go to HCI on a weekly basis with gift cards Sayeed gave her to exchange for information. (*Id.*) The gift cards were often from Target for amounts ranging from $50 to $250. (*Id.*) Piwowarski has identified Ella Gray and Joe English as two supervisors at HCI, and Denise Thomas as the former Marketing Director of PCS, that were aware of the exchange of confidential patient files for gift cards.

The Complaint sets forth one specific example of the alleged scheme in practice. On April 19, 2011, HCI received a referral from the Department of Aging for Mikeolene Williams, a Medicare beneficiary. Akira Syndor, an HCI Care Coordinator, performed an assessment of Williams on May 2, 2011. (*Id.* at ¶ 49). MPI received his information from HCI on May 5, 2011. (*Id.* at ¶ 50). On that same date, a marketer form MPI contacted Williams and discovered he had home care from an organization called Help at Home five days a week. (*Id.* at ¶ 51). MPI informed Williams that he was eligible for a home visit from a physician. (*Id.*) A doctor from PCS went to Williams' home to perform an assessment on May 9, 2011. (*Id.* at ¶ 52). Based on the assessment, the PCS physician

4

authorized home health services from Vital. (*Id.*) Vital began providing services to Williams on May 17, 2011. (*Id.* at ¶ 53).

The Complaint alleges "on information and belief" that around May 5, 2011, an MPI employee, believed to be Alice Piwowarski delivered gift cards from Sayeed to HCI personnel with the knowledge of HCI supervisors Ella Gray and Joe English in exchange for protected health information of individuals who had been screened by HCI, including Williams. (*Id.* at ¶ 56).

The Second Amended Complaint contains three Counts. Count I, as to all defendants for violations of the False Claims Act, 31 U.S.C. § 3729(a)(1), for submitting, or causing to be submitted, reimbursement claims for Medicare funds which it knew to be false. (*Id.* at ¶ 70-71). Count II, as to all defendants for violations of the False Claims Act through the prohibition on kickbacks, 42 U.S.C. § 1320A-7B(b)(2), in connection with referrals of patients for home health services. (*Id.* at ¶ 77). Count III, as to all defendants alleges violations of the Illinois False Claims Act, 740 ILCS 175/3, for submitting or causing to be submitted claims for reimbursement to Medicare. (*Id.* at ¶ 84). Defendants move to dismiss all counts.

**Legal Standard**

When reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. Id.*

5

*FCA claims are subject to the heightened pleading requirements of Rule 9(b). United States ex rel. Gross v. Aids Research Alliance-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Rule 9(b) requires the "who, what, when, where, and how: the first paragraph of any newspaper story," of the "circumstances constituting fraud." *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (quoting *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).*

**Discussion**

*Defendants, HCI, MPI, Vital, PCS, and Sayeed, filed two separate motions seeking dismissal the Second Amended Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 9(b). The MPI defendants also move to strike immaterial, scandalous, and impertinent matter from the Second Amended Complaint pursuant to Rule 12(f). This Court will first address the motion to strike before evaluating the legal sufficiency of the pleadings.*

*1. Motion to Strike*

MPI moves to strike paragraphs 2 through 8 of the Second Amended Complaint as immaterial and inflammatory. The Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and will usually be denied unless "the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration," as well as "unduly prejudicial." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F.Supp.2d 1006, 1009 (N.D. Ill. 1998) (internal citations omitted). A party will be prejudiced if the allegation at issue will confuse the issues in the case or is so lengthy and complex that it places an undue burden on the party. *Id.* The allegations at issue here involve certain luxury vehicles, airplanes, and real property owned by Sayeed as well as statement relating to Sayeed's "lengthy and notorious history of healthcare related fraud." There is no question that these allegations are irrelevant and not probative of any issue in the case since they,

in fact, are unrelated to the present case. Accordingly, this Court grants the motion to strike paragraphs 2 through 8.

*2. Motions to Dismiss*

All defendants dispute the specificity with which Relator alleges its claims under the False Claims Act "FCA". As noted above, claims under the False Claims Act are subject to the heightened pleading standard of Rule 9(b). *See United States ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 604 (7th Cir. 2005). Count I alleges violations of section 3729(a)(1), which provides liability for anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Count II alleges violations of the False Claims Act through an illegal referral kickback scheme in violation of 42 U.S.C. §1320(a)-7b(b). Count III alleges violations of the Illinois False Claims Act, 740 ILCS 175/1 *et seq.* based on the same conduct. All three Counts derive from the same alleged scheme of illegal referrals and kickbacks as part of an exchange of gift cards for confidential health information, allowing defendants to invoice Medicare for services.

"'[T]he complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *United States ex rel. Walner v. Northshore University Healthsystem,* 660 F. Supp. 2d 891, 897 (N.D. Ill. 2009) (quoting *Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 778 (7th Cir. 1994)); see also *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990); *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 U.S. Dist. LEXIS 46124, 2009 WL 1543709 at *4 (N.D. Ill. May 29, 2009). Representative examples of fraudulent conduct must be pled with the requisite level of specificity "*at an individualized transaction level.*" *United States ex rel. Dolan v. Long Grove Manor, Inc.,* No. 10 C 368, 2014 U.S. Dist. LEXIS 98429, at *11 (N.D. Ill. July 18, 2014) (quoting *United States ex rel. Fowler v. Caremark R.X. L.L.C.,* 496 F.3d 730, 740-41 (7th Cir. 2007) (emphasis in original). Further, the specific allegations of deceit must be linked to specific claims for payment. *Dolan,* 2014 U.S. Dist. LEXIS 98429, at *12.

"Allegations based on 'information and belief' thus won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that …'." *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

The Complaint lacks the specificity with respect to who did what when as mandated by Rule 9(b). To comply with Rule 9(b), Relator would have had to allege either that the defendants submitted a claim to Medicare on behalf of a specific patient, identifying the individual who had received a kickback (the gift card), or at least name the individual who had received a kickback. *See United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014) (citing *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 504 (6th Cir. 2007); *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311-12 (11th Cir. 2002); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). The Second Amended Complaint contains no such allegations.

Instead, Relator makes generalized accusations that the defendant entities were aware that there was a scheme of exchanging gift cards for information. Relator names several individuals from HCI "involved in the conduct," but makes no other specific allegation of any conduct by either Candace Brooks or Malika Mohammed. The third HCI employee identified as "involved in the conduct" Rosetta, but only alleges that she can be reached by calling each company and that she arranges services that are paid for by Medicare without tying in any specific false Medicare claims. Even the specific incident alleged does not identify an individual that received a gift card in exchange for providing confidential patient information. Further, the specific incident alleges only on "information and belief" that an MPI employee, "believed to be Alice Piwowarski" delivered gift cards from Sayeed to HCI personnel. These allegations give the appearance of specificity without the necessary factual support to tie the scheme together, which is insufficient to satisfy Rule 9(b).

**Conclusion**

Based on the foregoing, this Court grants defendants' motions to dismiss [56, 61]. The Second Amended Complaint is dismissed without prejudice. Relator may file an amended complaint within 21 days of this Order. Status hearing set for September 12, 2016, to stand.

IT IS SO ORDERED.

Date: August 25, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge