UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STOP ILLINOIS HEALTH CARE FRAUD, LLC, | ) |
| Plaintiff, | ) Case No. 12-cv-09306 |
| v. | ) Judge Sharon Johnson Coleman |
| ASIF SAYEED, PHYSCAN CARE SERVICES, S.C., MANAGEMENT PRINCIPLES, INC., and VITAL HOME & HEALTHCARE, INC., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stop Illinois Health Care Fraud, LLC brought this *qui tam* case pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. The plaintiff alleges that defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, the False Claims Act, and the Illinois False Claims Act, 740 ILCS 175/1, *et seq*. The United States and the State of Illinois did not intervene in the action, and plaintiff filed its Third Amended Complaint on September 22, 2016. (Dkt. 82.) Plaintiff alleges that the defendants paid a community care organization, Healthcare Consortium of Illinois ("HCI"), to give defendants information on clients that HCI had evaluated for eligibility for programs by the Illinois Department of Aging, so that defendants could then market Medicare reimbursed healthcare services to those clients.

Although the Court was prepared to proceed, on the morning a jury trial was set to begin, due to the unavailability of plaintiff Relator John Mininno the parties opted to proceed with a bench trial. The Court held a bench trial on July 22–24, 2019. After plaintiff presented its case in chief before the Court, defendants filed a motion for a directed finding on all claims, arguing that plaintiff failed to satisfy a prima facie case of an Anti-Kickback Statute violation. (Dkt. 212.) The Court

1

heard oral argument on defendants' motion on July 25, 2019. For the following reasons, defendants' motion is granted.

**Background**

The following constitutes the Court's findings of fact pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Defendant Asif Sayeed wholly owns the defendant Management Principals, Inc. ("MPI"). MPI arranges medical referrals to other entities and advertises itself as a "one stop shop," managing a variety of healthcare companies, including the defendants Vital Home & Healthcare, Inc. ("Vital Home") and Physician Care Services, S.C.

HCI was a non-governmental organization that coordinated services for low-income seniors. The primary function of HCI's senior program included sending case managers (later referred to as care coordinators) to meet with senior clients and survey their needs for access to a range of community offerings, such as "Meals on Wheels" and medical services, that would enable the seniors to remain in their own housing longer. HCI referred clients who needed and desired in-home healthcare to MCI on a rotating basis.

HCI and MCI entered into a management services agreement effective December 1, 2010. HCI's attorney Robert Spadoni primarily drafted and made revisions to the agreement, which Sayeed negotiated with Spadoni. HCI's Chief Program Officer at that time, Ella Grays, was also aware of the discussions. Pursuant to the agreement, MPI paid HCI $5,000 monthly for the 18-month length of the agreement in exchange for HCI's administrative advice and counsel. Sayeed testified that he discussed MPI's datamining objectives with Spadoni and Grays, whom confirmed that there were no issues. Grays testified that she knew it was not proper to get anything of value in exchange for referring a patient to a service or an agency and that in all the years that she was at HCI she had no knowledge that anyone had ever taken anything of value in exchange for a referral, including from

MPI or Vital Health. Relator John Mininno[1] testified that the payments made under the agreement represented some kind of kickback, without offering specifics as to what represented a kickback and how the practice was improper.

Alice Piwowarski, whose video deposition plaintiff played in court, worked for Vital Health from approximately 2005 to 2011. She testified that she had been trained and understood that items of value could not be given to a client in exchange for referrals or other improper purpose. Piwowarski also testified that she did not have any knowledge that defendants had ever paid any money or offered another item of value in exchange for patient referrals. While working for Vital Health, Piwowarski became friendly with several of HCI's staff members that she frequently saw. For special occasions, such as a birthday or shower, she would give an HCI employee a $5 or $10 gift card for Dunkin' Donuts. Piwowarski testified that she never did so with the expectation of receiving a referral from HCI and that Sayeed or another defendant never asked her to give anything of value in order to obtain referrals from HCI.

Rosetta Cutright (also known as Rosetta Cutright Woods) worked at MPI for about a year in 2012 and then at HCI from approximately 2013 to November 2018. Cutright testified that while she worked at HCI, the agency used a rotation list to assign referrals, such that each agency that qualified for the referral would receive a distribution of the referrals. Cutright testified that when she was a caseworker at HCI no one from MPI or any of Sayeed's companies offered her anything of value in exchange for a referral, and she never heard of anyone at HCI being offered something of value from any of Sayeed's companies. Moreover, when MPI employed Cutright, she never heard of anyone at MPI giving something of value to an HCI caseworker for a referral.

---

[1] The Court notes that several of Plaintiff's witnesses made themselves unavailable for trial. Eventually, Mininno did make himself available by video. His testimony, however, did not alter the Court's findings or conclusions.

**Legal Standard**

Because the Court held a bench trial, the Court construes defendants' motion as a Rule 52(c) motion for judgment on partial findings, rather than as a motion for a directed verdict. *See* Fed. R. Civ. P. 52(c).[2] Pursuant to Rule 52(c), if a party has been fully heard on an issue during a bench trial and the Court finds against the party on that issue, the Court may enter judgment against the party on a claim that can be maintained "only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). On a Rule 52(c) motion, the Court is "acting in the capacity of a finder of fact, weighing evidence and assessing the credibility of the witnesses." *Pinkston v. Madry*, 440 F.3d 879, 890 (7th Cir. 2006). Judgment on partial findings should be granted only if the Court could only find against the party. *See Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018).

**Analysis**

The following constitutes the Court's conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

To prevail on its Anti-Kickback Statute claim, plaintiff must prove by a preponderance of the evidence: (1) the offer or payment or the causing of any offer or payment of remuneration; (2) part of the purpose of which was to induce any person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program; (3) that those items or services were paid for in whole or in part by a Federal health care program; and (4) that the purposeful inducement in element two was knowing and willful. 42 U.S.C. § 1320a-7b. Any claim for items or services for which payment may be made in whole or in part under a Federal health care program that includes items or services resulting from a violation of the Anti-Kickback Statute also constitutes a false or

---

[2] Defendants move for involuntary dismissal under Federal Rule of Civil Procedure 41(b). When it comes to motions asserting that a plaintiff has failed to carry a burden of proof in presenting the plaintiff's case, under the 1991 amendments Rule 52(c) replaced the former Rule 41 language. *See* Notes of Advisory Committee – 1991 Amend.

fraudulent claim under the False Claims Act. *See* 42 U.S.C. § 1320a-7b(g). This applies equally to the Illinois False Claims Act, as Illinois courts interpreting the state act look to interpretations of the similarly worded federal False Claims Act. *See, e.g., People ex rel. Levenstein v. Salafsky*, 338 Ill.App.3d 936, 943, 789 N.E.2d 844 (2d Dist. 2003). Thus, plaintiff must prove a prima facie violation of the Anti-Kickback Statute in order to succeed on any of its claims before this Court.

       Defendants contend that although plaintiff failed to call a witness or present any evidence to prove any of the "specific instances" of Sayeed paying Target gift cards to HCI employees that plaintiff alleged in its Third Amended Complaint, the testimony solicited at trial regarding payments and remuneration was definitive. Grays and Piwowarski both testified that they did not have any knowledge that defendants ever paid any money or offered other items of value in exchange for patient referrals. Defendants further assert that plaintiff presented no evidence that the management services agreements was intended to induce referrals. Plaintiff presented oral argument in response to defendants' motion. Plaintiff contends that defendants espouse a narrow reading of the Third Amended Complaint. Despite the valiant efforts of counsel, nothing presented by counsel could refute defendants' arguments.

       As to the ultimate question of illegal kickbacks, the facts presented and agreed upon do not evidence any illegal or fraudulent activity. Although plaintiff made specific allegations concerning Target gift cards, plaintiff did not even attempt to marshal related evidence. From the evidence presented, there is no factual dispute that low value gift cards were given to a few HCI employees and that a management services agreement existed between HCI and MPI. However, plaintiff presented no evidence that the gifts cards or agreement were intended to induce referrals or other illegal or inappropriate kickbacks. Although Relator John Mininno testified that the payments made under the agreement represented some kind of kickback, Mininno could not explain how beyond pure conjecture.

On the contrary, several witnesses testified that the management services agreement did not indicate any expectations of referrals or other kickbacks from either HCI or MPI. Sayeed testified at trial that referrals were not the purpose of the $5,000 monthly payments made pursuant to the agreement. HCI's attorney Spadoni signed off on the agreement, indicating that there was nothing wrong or illegal about the agreement. Likewise, Piwowarski testified that she did not have any knowledge that defendants had ever paid any money or provided another item of value in exchange for patient information. She further testified that when she worked for Vital Home she gave a $5 or $10 gift card for Dunkin' Donuts to a few HCI employees on special occasions, but never did so with the expectation of receiving a referral from HCI. Piwowarski knew that improper gifts were not allowed and testified that Sayeed or another defendant never asked her to give anything of value in order to obtain referrals from HCI. Grays and Cutright, both of whom served in HCI management roles, testified that they were not aware that anyone at HCI had ever taken anything of value in exchange for a referral, including from MPI or Vital Health.

The evidence presented points to no connection between the gift cards or management services agreement and any illegal conduct. It is plaintiff's burden to make that connection. Without any quid pro quo evidence, a conclusion that an agreement exists or is expected is insufficient. The Court has not, and will not speculate, as to any connection.

**Conclusion**

Plaintiff failed to set forth evidence to meet its prima facie case on its claim of an Anti-Kickback Statute violation. Accordingly, the Court grants defendants' motion and judgment is entered in favor of defendants and against plaintiff on all counts.

IT IS SO ORDERED.

Date: 7/26/2019       Entered: _____
                      SHARON JOHNSON COLEMAN
                      United States District Judge

6