UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STOP ILLINOIS HEALTH CARE FRAUD, LLC, | ) ) ) Case No. 12-CV-09306 ) ) Judge Sharon Johnson Coleman ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| ASIF SAYEED, et al., | |
| Defendants. | |

**ORDER**

Pending before the Court is the parties' briefing regarding damages. Following a bench trial, the Court found that the defendants violated the Anti-Kickback Statute, the False Claims Act ("FCA"), and Illinois False Claims Act [257]. Thereafter, pursuant to the Court's instruction, the parties filed supplemental briefing regarding damages [261, 275, 276]. The Court has determined damages in the amounts discussed below.

Plaintiff seeks treble damages and civil penalties under the False Claims Act and contends that the appropriate damages in this case should begin with "the full amount of the claims submitted to the government which violated the Anti-Kickback Statute (and thus categorically violated the False Claims Act)." (Dkt. 261 at 2.) That amount should then be trebled. (*Id.*) In addition to treble damages, plaintiff seeks civil penalties, which the statute sets between $5,500 and $11,000 per violation. Although the False Claims Act provides for penalties between $5,000 and $10,000, *see* 31 U.S.C. § 3729(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 C.F.R. § 85.1, adjusted the civil penalty range to $5,500 and $11,000 for violations that occurred before November 2, 2015, as here. *See* 28 C.F.R. § 85.3.

Defendants disagree and propose the following alternatives: First, they claim that damages should be denied outright because plaintiff failed to demonstrate that the listed claims stemmed from

defendants' statutory violations. Failing that, defendants contend that any damages should be limited to claims that arose during the 18-month period when defendants were making $5,000 payments to Healthcare Consortium of Illinois ("HCI")—from December 2010 to approximately May 2012. Finally, defendants invoke constitutional arguments to request that the Court limit the amount assessed as damages regardless of the Court's chosen methodology.

The Court will quickly dispense with defendants' argument that plaintiff failed to prove any damages because the claims listed on plaintiff's Exhibit 9 (which is a spreadsheet listing ostensibly ill-gotten claims) could include run-of-the-mill referrals. Indeed, to reach a "no damage" scenario, every claim listed on Exhibit 9 would have to have been a standard referral disconnected from the conduct for which the Court has already determined defendants were liable. Defendants were free to present affirmative defenses at trial to demonstrate that these claims were not, as plaintiff claimed, the result of access to client lists secured by payments in violation of law. The trial phase is over—the Court will not relitigate it in the damages phase.

The Court next addresses the scope of claims that comprise the damages calculation. Defendants want the Court to draw the line when payments to HCI ended, while plaintiff claims that access to patient lists did not end after payments ceased. The Court has already weighed in on this issue, noting that payments "under the agreement constituted renumeration for a referral under the Anti-Kickback Statute while they were being paid, [and] any action by the parties after the fact does not vitiate that wrong-doing." (Dkt. 245 at 8.) The Seventh Circuit discussed how Sayeed testified that "the agreement opened the door to [] all HCI's patients." *Stop Ill. Health Care Fraud, LLC v. Sayeed*, 957 F.3d 743, 746 (7th Cir. 2020). Defendants' stance would only serve to encourage bad actors to limit the time frame of payments, while permitting follow-on benefits to be insulated from statutory violations.

Having determined the universe of false claims, the only issue that remains is the damages calculations. The Court notes that Defendants do not contest plaintiff's raw calculations of either the number or dollar value of claims on Exhibit 9. (*See* Dkt. 255-7.) The Court adopts plaintiff's damages calculations as to the claims processed by Vital Home & Healthcare, Inc ("Vital"). Vital's billings totaled $684,273.86 over 204 claims. (*Id.*) Trebling this amount results in a pre-penalty total of $2,052,821.58. Plaintiff requests the low end of the False Claims Act's civil penalty provision—$5,500 per claim. *See* 31 U.S.C. § 3729(a). This adds an additional $1,122,000 for a grand total of $3,174,821.58 in assessed damages for Vital claims, which is approximately 4.6 times the non-trebled billings.

The Physician's Care Services, S.C. ("PCS") claims are not as straightforward, as they may add a constitutional wrinkle. PCS's billings totaled $62,216.86 over 469 claims—and, once trebled, is a pre-penalty total of $186,650.58. If the Court was to assess the minimum $5,500 per claim civil penalty, that would add an additional $2,579,500 for a grand total of $2,766,150.58 for the PCS billing. That total is over 14 times the trebled amount. Unlike the Vital claims, which would survive both a due process and Excessive Fines Clause inquiry, if applicable, the PCS multipliers require the Court to assess whether such damages pass constitutional muster.

The law is unsettled in the Seventh Circuit as to whether the Excessive Fines Clause even "applies to civil actions under the False Claims Act." *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008); *see also Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting the excessive fine analysis in the civil penalty context is an "unsettled sea"). The *Rogan* court noted that the United States Supreme Court has held that "punitive damages are not 'fines' under the Eighth Amendment, [that] treble damages are often grouped with punitive damages, [but] that penalties paid to the sovereign can be 'fines' under the Eighth Amendment." *Rogan*, 517 F.3d at 453–54 (citing *Browning-Ferris Indus. of Vt.,*

*Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989)). Additionally, the Court is aware of the Supreme Court's decision involving due process requirements related to punitive damages in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). In *State Farm*, the Court held that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor," and that a single-digit ratio between punitive and actual damages will typically satisfy due process. *Id.* at 416.

Treble damages provisions by definition will fall on the single-digit side of the *State Farm* due process analysis. The issue in this case—and any FCA case involving false claims in small dollar values—is a civil monetary penalty assessed on a per-claim basis. Given the discussions in the Seventh Circuit case law, this Court finds that the excessive fines clause does not apply to these civil monetary damages. Such a result would negate the legislature's intent, as a party who knowingly defrauds the government and violates the False Claims Act could potentially avoid even the minimum statutory levy, provided the fraudulent conduct occurred at a low enough dollar amount. Additionally, even accepting that the statutory penalties are fines within the meaning of the Eighth Amendment, they are not excessive. "That is because 'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *Crespo*, 824 F.3d at 674 (quoting *United States v. Bajakajian*, 524 U.S. 321, 336, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)). In this case, plaintiff requested the minimum amount within the statutory range. The Court thus adopts plaintiff's damages calculations as to the claims processed by PCS as well.

In sum, the Court awards $3,174,821.58 in assessed damages against Vital, Asif Sayeed, and Management Principles, Inc., jointly and severally, for the Vital claims and $2,766,150.58 in assessed

damages against PCS, Asif Sayeed, and Management Principles, Inc., jointly and severally, for the PCS claims.

In addition, the Court accepts plaintiff's representation that the Government believes the relator is entitled to the maximum allowable amount of 30 percent under the statute. *See* 31 U.S.C. § 3730(d)(2) ("The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds."). The Court accordingly awards the plaintiff-relator the maximum 30 percent of the proceeds of this action, which totals $1,782,291.65.

The Court also orders the parties to confer on attorneys' fees pursuant to 31 U.S.C. § 3730(d)(2) within thirty days pursuant to Local Rule 54.3. The Court will assess proposed attorneys' fees at a later date.

Finally, based on the analysis above, the Court denies defendants' request for an additional hearing regarding the appropriate measure of damages and penalties that would not violate the Excessive Fines and Due Process clauses.

IT IS SO ORDERED.

Date: 11/4/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge