UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STOP ILLINOIS HEALTH CARE FRAUD, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ASIF SAYEED, et al., )<br>)<br>Defendants. ) | Case No. 12-cv-09306<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to reconsider the sanctions imposed on Defendants in the Court's order of December 15, 2025. For the following reasons, Defendants' motion [514],[516] is denied.

**BACKGROUND**

The Court will presume familiarity with the background of this case; a more detailed treatment can be found in prior orders. *See, e.g., Stop Illinois Health Care Fraud, LLC v. Sayeed*, No. 12-CV-09306, 2025 WL 3628621, at *1–2, *1 n.1 (N.D. Ill. Dec. 15, 2025) [hereinafter "Sanctions Order"].

On December 15, 2025, the Court found that Defendants committed a severe violation of their obligation to disclose "the existence of at least four potential witnesses who may have known relevant information about Defendants' claims for reimbursement to Medicare and Medicaid, including the claims in the logs" known as "Exhibit 9." *Id.* at *4. Exhibit 9, which consists of 673 requests for Medicare payment submitted by Defendants between December 13, 2010 and June 3, 2015, is the central document in the damages dispute between the Parties. *Id.* at *2.

The existence of the four witnesses at issue—Kerry Theodoropoulos, Valerie Roach, Asim Farooqi, and Amy Zavesky—first came to the Court's attention when Defendants listed them as

possible witnesses for an October 16, 2024 evidentiary hearing. *Id.*; *see* dkt. 475. Defendants stated that the witnesses would only be called for the purposes of document authentication; however, at the hearing, and in the now-stricken documents that Defendants introduced, it became apparent that at least Ms. Theodoropoulos and Ms. Roache likely possessed substantive information relevant to Plaintiffs' claims. *See* dkt. 480 at 49–60, 71; dkt. 492-2. But Plaintiffs averred that they did not have previous knowledge of any of the names on Defendants' list. Dkt. 494 at *6–7; *see also* dkt. 480 at 56–60.

The Court therefore found that Defendants failed to disclose Ms. Theodoropoulos, Ms. Roach, Mr. Farooqi, and Ms. Zavesky, and possibly unknown others, as potential witnesses. *Id.* at *4–5. In doing so, Defendants acted in bad faith, potentially prolonging this case by years, because "There is no conceivable way that Defendants were unaware of the relevance of" the undisclosed witnesses. *Id.* at *5 (citing Fed. R. Civ. P. 26(a)(1)(E)). The Court declined Plaintiff-Relator's suggestion to simply re-enter the Court's prior damages judgement, with interest. Instead, the Court opted to fine Defendants in an amount equal to ten percent of that prior damages judgement. *Id.* at *6. The Court also imposed additional sanctions in the same amount to be assessed every thirty days until the damages dispute had been resolved, or the case settled. *Id.* The immediate sanctions were imposed on December 15, 2025, with the issuance of the order. *Id.* at *7. The first assessment of continuing sanctions took effect on January 14, 2026; if applicable, the second assessment will take effect on February 13, 2026.

On January 2, 2026, Defendants filed the instant motion, requesting that the Court reconsider its sanctions order. Dkt. 514. The next day, Defendants filed a slightly amended version of their brief.[1] Dkt. 516 [hereinafter Def. Br.]. After receiving the motion, the Court ordered that "Defendants' obligation to pay the sanctions ordered by the Court" would be stayed until February 23, 2026. Dkt.

---

[1] All citations in this opinion to Defendants' motion will refer to the amended brief.

518. Plaintiff-Relator and Defendants timely submitted their response and reply, respectively, and the Court held brief oral arguments on January 28, 2026.

## LEGAL STANDARD

It is well-established that in determining whether to grant a motion to reconsider, the Court retains sound discretion. *Caisse v. Natioanle de Credit v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). "Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments, and such motions are not the appropriate vehicles for tendering new legal theories for the first time." *In re Oil Spill by the "Amoco Cadiz,"* 794 F. Supp. 261, 267 (N.D. Ill. 1992), aff'd, 4 F.3d 997 (7th Cir. 1993). A motion to reconsider serves a limited function and should only be presented when there has been a significant change in law or facts after the issue is presented to the Court, or the Court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented" to it or has "made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motions to reconsider should be equally rare." *Id.* (internal quotations omitted).

## DISCUSSION

Defendants' motion brief, which contains no headings of any sort, does not clearly state the legal grounds on which they believe reconsideration is warranted. *See generally* Def. Br. However, Defendants seem to be making two points. First, they argue that the sanctions are unwarranted because, they claim, the witnesses in question either were in fact disclosed to Plaintiffs, or else because Defendants were substantially justified in failing to disclose. Second, Defendants argue that the Court is using sanctions for an improper and "coercive" purpose. With one minor exception, neither argument holds water.[2]

---

[2] The Court will not address Defendants' continued and pervasive attempts to relitigate issues that have been adjudicated and affirmed—such as whether Plaintiffs have met their evidentiary burden—except to note that

I.      **Failure to Disclose Witnesses**

The Court begins with the exception noted above. The Court's sanctions order stemmed from Defendants' failure to disclose the existence of certain witnesses who may have held discoverable information. However, Defendants have shown convincingly that they did, in fact, disclose Asim Farooqi as a potential substantive witness. Def. Br. *3; dkt. 514-1 at *2. The Court acknowledges this error of apprehension. *See Bank of Waunakee*, 906 F.2d 1185, 1191 (7th Cir. 1990). However, the error was harmless. The Court's analysis of Defendants' failure to disclose witnesses rested primarily on recent revelations concerning Ms. Theodoropoulos and Ms. Roach. *See* Sanctions Order *4–6. Indeed, Mr. Farooqi's name does not appear at all in the Court's opinion; he is instead referenced only collectively through an invocation of the list of four witnesses submitted by Defendants prior to the October 16, 2024 evidentiary hearing. *Id.* at *2; see dkt. 475. The Court regrets its error concerning Mr. Farooqi, but given that he was not involved in the Court's primary analysis, the error does not begin to approach the threshold necessary for reconsideration. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (granting a motion to reconsider is an "extraordinary remed[y] reserved for the exceptional case").

With respect to the other witnesses, the Court first observes that Defendants' brief tends to mischaracterize the basis of the sanctions imposed by the Court. Defendants repeatedly claim that they are being punished for submitting proposed new witnesses for authentication purposes. *See, e.g.,* Def. Br. *2, 5; dkt. 521 at *4, 7. But that is incorrect. While Defendants' submission of authentication witnesses may have brought the matter to Plaintiffs' and the Court's attention, the sanctionable conduct occurred years earlier, when Defendants should have disclosed the names of these witnesses and (except for Mr. Farooqi) failed to do so. The Court made this quite clear in its opinion. *See, e.g.,*

---

such issues are irrelevant to the question of whether the sanctions were appropriate. *See, e.g.,* Def. Br. *8; dkt. 521 at *3–5.

Sanctions Order *4 ("The issue here is not really the *newness* of the evidence, but rather its *oldness*."). Defendants' mischaracterization to the contrary smacks of deliberate obfuscation.

On the occasions when Defendants do engage with the substantive basis of the Court's sanctions, they argue that Plaintiffs "knew enough" about Ms. Theodoropoulos because her name came up during a deposition of Defendant Sayeed. Def. Br. *3; dkt. 514-3; *see also* 514-4. But this is insufficient notice under Federal Rule of Civil Procedure 26(a). As another court in this district has held, "knowing an individual exists does not equate with knowing that the witness has discoverable information related to the claims or defenses at issue in the suit, let alone that the witness has first-hand knowledge of admissible evidence and may testify at trial." *Doe 1 v. City of Chicago*, No. 18-CV-3054, 2019 WL 5290899, at *8 (N.D. Ill. Oct. 18, 2019) (Harjani, J.); *see also* Fed. R. Civ. P. 26(a)(1)(A)(i) & Advisory Committee Comments to 1993 Amendments ("As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties. Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed."). If anything, the fact that Ms. Theodoropoulos's name came up during the deposition ought to have put Defendants on notice that they had already neglected to disclose her as a potential witness, and thus had an obligation under Rule 26(e) to supplement their disclosures.

Additionally, Mr. Sayeed's deposition statements concerning Ms. Theodoropoulos conflict with Defendants' questioning of her at the October 16, 2024 hearing. At his 2019 deposition, Mr. Sayeed claimed that Ms. Theodoropoulos wouldn't have any information about records relating to the illegal kickback scheme. Dkt. 514-3. But at the hearing, and although Ms. Theodoropoulos was only called for the purpose of document authentication, Defendants began asking questions that strayed into substantive testimony concerning the referrals at issue in Exhibit 9. Dkt. 480 at 61–64. The Court

sustained Plaintiff-Relator's objection to such questions, *id.*, but the fact that Defendants asked the questions at all indicates that Ms. Theodoropoulos may have known much more than Mr. Sayeed implied back in 2019. Thus, rather than providing any argument for reconsideration, Defendants have instead pointed to additional evidence that they acted in bad faith.

With respect to Ms. Roache, Defendants resort to a strawman argument, claiming that the Court's conclusion that she should have been disclosed "is tantamount to suggesting Defendants should have identified each person who worked at the companies." Def. Br. *4. That, of course, is not the case. Defendants' obligation under Rule 26(a) is the same as it ever was: to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." The stricken document that Defendants attempted to introduce at the October 16, 2024 hearing contained ample evidence that Ms. Roache likely possessed discoverable knowledge about Defendants' illegal referrals. Defendants' argument to the contrary—that Ms. Roache's task of writing referrals provides no reason to conclude that she possessed discoverable information, and that her nondisclosure was therefore substantially justified—is unexplained and unexplainable. Def. Br. at *5. Under Rule 37(c)(1), failures to disclose may be excused if they are "substantially justified," which the Seventh Circuit has held means "has a reasonable basis in law and fact." *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 724 (7th Cir. 2025). Here no such reasonable basis exists, and Defendants cannot save themselves by pretending, in spite of the evidence that they themselves attempted to introduce, that Ms. Roache had no involvement with these records.

Then there is Ms. Zavesky, about whom very little appears to be known. Defendants claim that she has not been referenced in any document in this case's voluminous docket, and—aside from the list submitted prior to the October 16, 2024 hearing—the Court believes they are correct. Def. Br.

*5 n.2. Defendants are also correct that there is no evidence specifically indicating that Ms. Zavesky possessed discoverable information. *Id.* But, as with Mr. Farooqi, the Court's sanctions order had very little to do with Ms. Zavesky. To the extent she was implicated, it was only because, given what is now known about Ms. Theodoropoulos and Ms. Roache, it is reasonable to *suspect* that she may also have possessed such information. *See* Sanctions Order *4–6 ("Today, we know that at least Ms. Theodoropoulos and Ms. Roache possessed information that may have aided Plaintiffs in making such determinations. That may also be true of the other two potential witnesses identified by Defendants prior to the October 16, 2024 hearing, and perhaps even of other people who are still completely unknown."). The lack of direct evidence implicating Ms. Zavesky was known by the Court at the time of its sanctions order, and does not constitute grounds for reconsideration. *Bank of Waunakee*, 906 F.2d at 1191.

In summary, Defendants have shown that they did properly disclose Mr. Farooqi as a witness. However, the Court's sanctions order did not base any significant part of its analysis on him. With respect to the other witnesses, Defendants have not shown that they were either disclosed at the proper time or that Defendants were substantially justified in failing to disclose them. To the extent that Defendants have tried to argue to the contrary, they have instead only offered more evidence of their own bad faith. The Court finds that its assessment of Defendant's misconduct—with the minor exception of the role of Mr. Farooqi—was correct and appropriate.

**II.     Appropriateness of Sanctions**

Defendants also attempt to argue that, regardless of anything else, the Court's sanctions are "an affront to the fair conduct of proceedings as its practical effect is to coerce Defendants to settle in an unfavorable amount[.]" Def. Br. at 9. As an initial matter, that may or may not be the practical effect of the sanctions. First, as the Court specified in its order, the sanctions are intended to make *the People* whole—not Plaintiff-Relator. Sanctions Order *6. The sanctions will not contribute to Plaintiff-

Relator's attorney's fees or otherwise to Plaintiff-Relator's pocketbook. Additionally, Plaintiffs have their own incentives to bring this case, at long last, to a speedy conclusion. If the Court determines that Plaintiffs are dragging out settlement negotiations in bad faith, then that could be grounds for sanctions of their own. As such, the Court disagrees with Defendants' assessment of the "practical effect" of the sanctions.

More broadly, Defendants cite no case law in support of their accusation of unfair coercion. Def. Br. *9–10; *see also* dkt. 521 at *7–10. That is unsurprising, because "coerciveness" is not a reason to find sanctions improper. Indeed, all sanctions are coercive to a certain extent, in that they seek to punish a party for bad behavior and to encourage good behavior down the road. However, "coercive" is also a legal term of art in this context. As the Seventh Circuit has explained,

> civil sanctions fall in two categories. They can compensate the complainant for his losses caused by the contemptuous conduct. Or they can coerce the contemnor's compliance with a court order. A coercive sanction must afford the contemnor the opportunity to "purge," meaning the contemnor can avoid punishment by complying with the court order. … Without a purge provision, the order is not coercive.

*F.T.C. v. Trudeau*, 579 F.3d 754, 769–770 (7th Cir. 2009) (citations omitted). The court went on to clarify that compensatory sanctions must have two key hallmarks: (1) an explanation of how the sanction was calculated; and (2) an explanation of how the sanction should be administered. *Id.* at 770.

Based on this schema, the sanctions imposed by the Court are compensatory rather than coercive. As noted above, the sanctions are necessary to make the People whole after Defendant's misconduct. Sanctions Order *6. The Court also explained the calculation of the sanctions (ten percent of the previously entered judgment) and their administration (pay each month to the Clerk, who will put it in a blocked, interest-bearing account). The previously entered judgment represents an appropriate baseline for the sanctions calculation because it is the proceedings leading up to and following that judgment that have been most impacted by Defendants' misconduct. Ten percent of that judgment as an immediate sanction represents the Court's reasonable judgment of what is

necessary to make the People whole, given the significant expenditure of public resources on a case that very well could have ended several years ago if not for Defendants' egregious violations of discovery rules. Continuing sanctions in the same amount are also appropriate to compensate the People for any continuing dawdling. The Seventh Circuit has made clear that this situation presents a proper use of sanctions, and *that*, rather than Defendants' uncited accusations of coercion, is the applicable law at issue. *Trudeau*, 579 F.3d at 769–770.

The Court also observes that Defendants' behavior since the imposition of the sanctions has confirmed their appropriateness. Defendants certainly had the right to move for reconsideration, but the vague and unsupported instant motion wastes everyone's time. Still more concerning is that Defendants have asserted, baselessly, that the Court's sanctions order will "influence[] how the Magistrate Judge views the case, both consciously and perhaps subconsciously, with how she will conduct the settlement conference and whether she will take an impartial 'fresh' view of the parties' positions." Def. Br. *11. Consequently, and seemingly at Defendants' request, the magistrate judge struck a scheduled settlement conference and refrained from setting a new conference until after the Court's resolution of the instant motion. Dkt. 519. Thus, in addition to dishonorably impugning the character and professionalism of an able magistrate judge, Defendants have continued to engage in exactly the sort of delay that the Court's sanctions sought to punish. The Court will not abide any further disrespect of the magistrate judge, nor will it abide any further delay tactics.

## CONCLUSION

For the reasons stated above, Defendants' motion to reconsider [514], [516] is denied. The Court lifts its stay of Defendants' obligation to pay the sanctions imposed by this Court. The payment owed for the immediate sanctions the Court imposed in its order of December 15, 2025 will be due to the Clerk of the Court within two weeks of this Order. The payment for Defendants' first continuing sanctions, which took effect on January 14, 2026, will be due within four weeks of this

Order. Defendants' second continuing sanctions, if applicable, will be assessed as previously ordered, on February 13, 2026, with payment due 30 days later. Any further continuing sanctions will be imposed in accordance with the terms of the Court's order of December 15, 2025.

**IT IS SO ORDERED.**

Date: 2/4/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge